STATE EX REL. NELSON ET AL., RELATORS AND APPELLEES, V.
DAN B. BUTLER, MAYOR, ET AL., RESPONDENTS AND APPEL-
LANTS: IMPLEADED WITH DON B. WOODYARD ET AL., RE-
SPONDENTS AND APPELLANTS, INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS UNION, LOCAL UNION NO. B-763,
INTERVENER AND APPELLEE, RUTH K. JOOS ET AL., INTERVEN-
ERS AND APPELLANTS, CLARENCE J. CALABRIA, INTERVENER
AND APPELLANT.

17 N. W. 2d 683

FILED FEBRUARY 16, 1945.   Nos. 31815, 31822, 31827, 31842.

*Harold C. Linahan, G. H. Seig, Edward F. Fogarty* and *Edward Sklenicka,* for appellants Butler *et al.*

*Kennedy, Holland, Delacy & Svoboda, Crofoot, Fraser, Connolly & Stryker, W. W. Wenstrand, David D. Weinberg, Louis T. Carnazzo, Leon, White & Lipp, George B. Boland, Paul Garrotto, Rudolph Tesar, Ellick, Fitzgerald & Smith, Monsky, Grodinsky, Marer & Cohen, Gross & Crawford* and *Frank C. Heinisch, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ., and SPIKES, District Judge.

CHAPPELL, J.

This is a mandamus action. Relators are legal voters, qualified electors, and signers of a referendum petition. They filed an application in the district court for Douglas county, Nebraska, on behalf of themselves and all others similarly situated, praying for a writ of mandamus to require the city council of Omaha, Nebraska, to repeal an alleged legislative resolution adopted by it on September 21, 1943, or to check referendum petitions filed September 28, 1943, and if found sufficient submit the same to referendum of the electorate as provided in the home rule charter (R. S. 1943, secs. 14-210 to 14-212). They also prayed for ancillary injunctive relief until after the election. The individual members of the city council and the Peoples Power Commission were made respondents. International Brotherhood of Electrical Workers Union, Local Union No. B-763, for itself and on behalf of all its members, employees of Nebraska Power Company, intervened praying for similar relief. Certain other legal voters and qualified electors, who are preferred stockholders of the Nebraska Power Company, also intervened for themselves and all others similarly situated, praying for like relief. They later filed a supplement to their petition in intervention in which they recognize the rule of law that an intervener must take the case as he finds it, but challenge the constitutionality of the Peoples Power Commission law (sections 14-1501 to 14-1523, R. S. 1943), if it should be determined by the court that its constitutionality may be properly challenged in this action. Clarence J. Calabria, a qualified elector and taxpayer, intervened for himself and on behalf of all others similarly situated, praying that the Peoples Power Commission law, or certain sections thereof, be declared unconstitutional, and that a writ of mandamus be denied.

Appropriate answers and replies were filed and when the issues were complete the case proceeded to trial. The various pleadings were voluminous and we do not deem it necessary to recite them. Thereafter the trial court entered its decree finding generally for relators, also for the interven-

ing Union and preferred stockholders in so far as they prayed for the same relief as relators, and awarded a peremptory writ of mandamus. However, it was found by the trial court that the questioned constitutionality of the Peoples Power Commission law was not germane to the issues, or an issue which could properly be decided in the case, and dismissed the supplemental petition in intervention of the preferred stockholders and Calabria's petition in intervention which raised that question. The decree also enjoined the city and the Peoples Power Commission from proceeding further until an election was held as ordered or until this cause was finally determined. Motions for new trial were overruled; whereupon respondents appealed separately, and the interveners, preferred stockholders and Calabria, cross-appealed. By stipulation of the parties there was filed in this court but one full transcript and bill of exceptions. The appeals and cross-appeals were argued and submitted together and this opinion disposes of all of them.

Numerous lengthy briefs were filed by the parties. Many interesting and important legal questions are ably presented therein. However, under the issues presented, we find it necessary to discuss but two of them. The first is, whether the resolution of the city council is legislative in character and subject to referendum; and the second, whether the constitutional questions raised only by interveners are germane to the issues and presented in such manner as will properly permit this court to decide them in this action. We find that the trial court erroneously decided the first question, but correctly decided the second.

Although we are of the opinion that only questions of law are presented for decision, we deem it necessary for clarity to first recite certain pertinent facts about which there is no dispute. The legislature of 1943 passed an eminent domain statute, commonly known as L. B. 204 (R. S. 1943, secs. 14-1501 to 14-1523), but legislatively named the "Peoples Power Commission Law." The governing body of the metropolitan city, defined in the act as the city council, after the statute could become operative as a law, adopt-

ed the resolution involved. The resolution itself recites in substance the act in so far as it is relevant, and we do not deem it necessary to set forth its provisions.

The resolution provided as follows:

"City of Omaha

"Council Chamber

"Omaha, Nebr., September 14, 1943

"Whereas, the legislature of the State of Nebraska at its regular session held in the year 1943 enacted a bill known as Legislative Bill Number 204, and the Governor of the State approved the same on May the 26th, 1943; and

"Whereas, said Bill became operative as law of this State on the 29th day of August, 1943; and

"Whereas, said Legislative Bill provides for, creates and tenders to each city of the metropolitan class within the State of Nebraska a power commission when it has been determined by the Governing Body of the metropolitan city, by resolution or otherwise, that an electric plant or an electric light and power plant located or operating within or partly within and partly without such city (if the main part of such plant be within such city), should be erected, constructed, purchased or acquired and appropriated by an exercise of the power of eminent domain, and the mayor of such city, with the approval of the governing body of such city, shall appoint six persons who, with the mayor ex officio, shall be members of such power commission; and

"Whereas, the City of Omaha, is a city of the metropolitan class within the State of Nebraska; and

"Whereas, said Legislative Bill Number 204 in Section 13 thereof provides the mode of procedure in event an electric plant or an electric light and power plant shall be acquired by an exercise of the power of eminent domain and the provisions of said section requires that before any such plant can be acquired or appropriated by an exercise of the power of eminent domain the question and proposition shall first be submitted to the electors of such city and approved by them; and

"Whereas, said Legislative Bill Number 204 in Section

16 thereof requires that before any such electric light plant or electric light power plant be acquired by purchase at a negotiated price, the price, together with the terms and conditions of the contract of purchase shall be submitted to the electors of such city and approved by them;

"Now, Therefore, Be It Resolved by the City Council of the City of Omaha that it is hereby determined that an electric light and power plant located and operating within or partly within and partly without such city (if the main part thereof be within such city) should be erected, constructed, purchased or acquired and appropriated by an exercise of the power of eminent domain.

"(Signed)   Richard W. Jepsen

"By Dan B. Butler

"Adopted September 21, 1943

"Dan B. Butler, Mayor and President, City Council.

"Attest:   M. J. Dineen, Jr.,

"City Clerk

"(City Seal)"

Following this action the Mayor, with the approval of the governing body of the city, appointed six persons to serve, with the Mayor ex officio, as members of the "Peoples Power Commission of Omaha, Nebraska." The Governor also appointed two others to serve as members thereof from contiguous counties in the metropolitan area. They took oath, gave bond, organized, elected a chairman, and are ready to proceed as the "People's Power Commission."

On September 28, 1943, there were filed and presented to the city council referendum petitions, which for the purposes of this case, it is conceded contained sufficient legal signatures, protesting against the passing of the resolution, petitioning its reconsideration and repeal, or if it be not repealed that the city council should proceed to submit the resolution to the voters of the city of Omaha at a special election called for that purpose or at a general city election as provided by the home rule charter. At or about the same time appropriate demand was made upon the city council in writing and otherwise for such action, all of

which the council refused to do or perform for the reason, among others, that the resolution was executive or administrative in character. This mandamus suit resulted.

It will be well at the outset to call attention to the fact that the resolution of the city council is the measure sought to be referred to the electorate, and the Peoples Power Commission Law is not directly but incidentally involved for the sole purpose of giving construction to the resolution. We find that the answer to the question of whether the . resolution is subject to referendum depends entirely upon whether it is legislative or only executive and administrative in character. In this connection there is an applicable rule of law that referendum provisions apply only to legislative matters and not to those which are executive or administrative. In *Read v. City of Scottsbluff*, 139 Neb. 418, 297 N. W. 669, this court approved a statement appearing in 122 A. L. R. 769, Annotation, that, "It is the general rule that initiative and referendum provisions are applicable only to acts which are legislative in character, and are not applicable to those dealing with administrative or executive matters." See, also, *Schroeder v. Zehrung*, 108 Neb. 573, 188 N. W. 237. Accurately speaking, an ordinance is the proper designation for legislative action by a city council, but the form or name, whether called a resolution, or an ordinance, does not change the essential nature of the real step taken. If legislative, the law ordinarily contemplates that the referendum may be invoked. However, it is usually held applicable to all ordinances and resolutions which constitute an exercise of legislative power as distinguished from mere executive or administrative action. 1 McQuillin, Municipal Corporations (2d ed.) sec. 366, p. 1000; 43 C. J., sec. 952, p. 585; 37 Am. Jur., sec. 209, p. 845.

Section 25-2156, R. S. 1943, provides that, "The writ of mandamus may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust or station. * * * ." It is obvious therefore that if the action taken by the resolution was not legislative

in character then the law does not specifically enjoin a duty upon the council to submit it to referendum of the electorate, and a writ of mandamus cannot be awarded.

An examination of the Peoples Power Commission law discloses that it is a complete legislative act, of state-wide concern. Its primary purpose is to provide a means, mode and manner of procedure whereby cities of the metropolitan class and certain areas contiguous thereto may erect, construct, purchase, or acquire and appropriate existing public utility properties for public use by eminent domain. As an existent general law it tenders or makes available enlarged powers of eminent domain to metropolitan cities if the governing body thereof decides by resolution or otherwise to undertake the use of such delegated powers, which are to be exercised without any restriction or limitation under the city charter of home rule cities. However, the act specifically provides that it is not exclusive of other like or similar powers and methods or manner of procedure already conferred by law.

As was recently stated in *May v. City of Kearney, ante,* p. 475, 17 N. W. 2d 448, "A discussion of this subject necessitates an understanding of the nature of the power of eminent domain. It is an attribute of sovereignty, inherent in a sovereign state whether or not reference is made to it in the Constitution of the state. In other words, the power of a sovereign state to take property, or to authorize its taking for a public use, rests upon necessity because there can be no effective government without it. The power exists independent of the Constitution, the provision of the Constitution with reference thereto being a limitation on the exercise of the power, and in no sense of the words a grant of power. * * * The language of the Constitution presupposes the existence of the power outside the Constitution and simply limits the right to use it. No procedure is prescribed in the Constitution for its exercise, but it imposes certain limits to which the state itself must conform. Within these limits the state, acting through the department or agency authorized to exert the legislative power,

may proceed at will, and the extent, method and necessity of exercising the power to take private property for public use may not be interfered with by either of the other departments of government. *Garrison v. City of New York,* 88 U. S. 196." It must be recognized that the power of eminent domain may be delegated by the legislature but because it is a sovereign power the legislature cannot divest itself of the power or deprive itself of the right to repossess or reclaim its primary prerogative to exercise the power as it sees fit within the limitations contained in the Constitution. 1 Lewis, Eminent Domain (3d ed.) sec. 374, p. 683.

In *Nagle v. City of Grand Island,* 144 Neb. 67, 12 N. W. 2d 540, it was said: "Eminent domain is the right or power to take private property for a public use. It belongs to the state and it may be exercised either directly by the legislature or through the medium of corporate bodies, which includes municipalities, * * * to whom it sees fit to delegate such power in the public's interest. While this power may be delegated, it belongs to the state and subject to its control and regulation and is a matter of state (wide) concern." In effect that case holds that when the legislature has enacted a statute delegating the power of eminent domain to municipal corporations, such law takes precedence over any provisions in a home rule charter and the provisions of the charter must yield thereto. Logically to make the rule applicable to the case at bar we add the words, "except in so far as the statute itself preserves for cities of a class like or similar powers already delegated to them by the legislature and adopted as a part of their home rule charters."

It has also been held that since the power of eminent domain is an attribute of sovereignty and inherent in the state, only those agencies to whom the legislature has delegated the power can exercise such right and it must be exercised only on the occasion, in the mode or manner, and by the agency prescribed by the legislature. *Nelson v. Harlan County,* 2 Neb. (Unof.) 537, 89 N. W. 458; *Georgen v. De-*

*partment of Public Works,* 123 Neb. 648, 243 N. W. 886; *St. Louis Connecting R. Co. v. Blumberg,* 325 Ill. 387, 156 N. E. 298; *Cincinnati v. Vester,* 281 U. S. 439, 50 S. Ct. 360. In *In re Appraisement of Omaha Gas Plant,* 102 Neb. 782, 169 N. W. 725, it was said: "The power to exercise the right of eminent domain must be exercised by, or conferred by, the legislature, and when it is granted to a municipal corporation, * * * that body must determine how far it will make use of the power thus conferred. This is an *executive or administrative act."* (Italics supplied.)

In *Read v. City of Scottsbluff, supra,* this court adopted and approved a rule stated in *Monahan v. Funk,* 137 Or. 580, 3 Pac. 2d 778 that, "The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one making a law or one executing a law already in existence; * * * ." Measured by this test the resolution involved could not be legislative in character, otherwise it would improperly delegate the legislative powers of the legislature to the city council of the city of Omaha. A like situation but from a different approach was presented in *Lennox v. Housing Authority of City of Omaha,* 137 Neb. 582, 290 N. W. 451, wherein it was said: "The contention is advanced that the legislation delegates legislative powers to the city council of the city of Omaha and to the Housing Authority of the city of Omaha, contrary to section 1, art. II, and section 1, art. III of the Nebraska Constitution. The part of the legislation to which plaintiffs specifically refer is that part of section 3, ch. 29, Laws 1935, which says in part: 'When it has been determined by the governing body of any metropolitan city, by ordinance in the exercise of its discretion, that it is expedient to create a housing authority, the mayor of such city, with the approval of the governing body of the city shall appoint five persons who shall constitute the housing authority.' This does not delegate legislative authority to the governing body of the city. It merely provides the contingency upon the happening of which the enacted legislation becomes operative. Under many statutes, the future

contingent event upon which the operation of the law depends is the favorable result of a popular election. The providing of such contingencies upon which the law might properly be limited to take effect does not constitute a delegation of legislative power. The applicable rule is: The legislature cannot delegate its powers to make a law, but it can make a law to become operative on the happening of a certain contingency or on an ascertainment of a fact upon which the law intends to make its own action depend. *State v. Frear*, 142 Wis. 320, 125 N. W. 961; *State v. Sullivan*, 67 Minn. 379, 69 N. W. 1094; *Edwards v. Housing Authority of City of Muncie*, 19 N. E. (2d) (Ind.) 741; *Housing Authority of County of Los Angeles v. Dockweiler*, 94 Pac. (2d) (Cal.) 794."

In this connection it has been authoritatively stated: "The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law; the first cannot be done, to the latter no valid objection can be made." 16 C. J. S., sec. 133, p. 341. See, also, *Cincinnati W. & Z. R. Co. v. Commissioners of Clinton County*, 1 Ohio St. 77; *Field v. Clark*, 143 U. S. 649, 12 S. Ct. 495; *Williams v. Evans*, 139 Minn. 32, 165 N. W. 495.

The governing body of the city of Omaha by its resolution did not make a law but thereby acted in an executive or administrative capacity as an instrumentality of the state to make operative the provisions of a state law already existing. In other words, their resolution simply placed in effect a contingency, the event upon which the future operation of the statute, already complete and existent, depended. The city council was powerless to amend, change or contravene the provisions of the law and without authority to delegate to the electorate of the city of Omaha the performance of an act which they alone as an agency were delegated to perform in a certain mode or manner as provided by the statute. To hold otherwise would wrongfully permit the electorate of the city of Oma-

ha to invalidate a general legislative eminent domain statute of our sovereign state and legislate for and on behalf of the state. *Adams v. City of Omaha,* 101 Neb. 690, 164 N. W. 714; *Marquis v. Polk County Telephone Co.,* 100 Neb. 140, 158 N. W. 927; *Cincinnati, W. & Z. R. Co. v. Commissioners of Clinton County, supra; Hyde v. Wilde,* 51 Cal. App. 82, 196 Pac. 118; *Neils v. City of Seattle,* 185 Wash. 269, 53 Pac. 2d 848; *Riedman v. Brison,* 217 Cal. 383, 18 Pac. 2d 947.

Referring to the second question presented, there are two compelling reasons why this court may not properly pass upon the constitutional questions. First, they are not germane to the issues or presented in such manner as will properly permit the court to decide them in this action; and second, the act claimed to be unconstitutional is not being or about to be applied to the disadvantage or injury of interveners or of any other person.

The issues joined between relators and respondents do not raise any question of the constitutionality of the Peoples Power Commission law. They both rely upon its validity. It does not appear as an issue either in the application for the writ, the alternative writ, or the answer of respondents thereto. The questions are raised only by intervention. The performance of the alleged duty which it is sought to compel does not depend upon the constitutionality of the "Peoples Power Commission Law", but depends solely upon whether the resolution was legislative in character, thereby bringing to power the referendum provisions of the home rule charter.

Since mandamus is no longer a prerogative writ we have recognized that the statute, section 25-328, R. S. 1943, justifies intervention in mandamus cases by persons having an interest in the subject matter in litigation of such a direct and immediate character that they will gain or lose by the direct operation and effect of the judgment. *First Nat. Bank v. Lancaster,* 54 Neb. 467, 74 N. W. 858; *State ex rel. Randall v. Hall,* 125 Neb. 236, 249 N. W. 756. However, it is also the rule that, "Ordinarily, an intervener must take

the suit as he finds it, and is bound by the previous proceedings in the case, and cannot complain of the form of the action, or of informalities or defects in the proceedings between the original parties." *Drainage District v. Kirkpatrick-Pettis Co.,* 140 Neb. 530, 300 N. W. 582. Interveners are ordinarily entitled to present only issues, as distinguished from facts, which sustain or oppose the respective contentions of the relators and the respondents. 5 Bancroft, Code Practice and Remedies, sec. 3900, p. 5172; *Wright v. Jordan,* 192 Cal. 704, 221 Pac. 915. An intervener who is not an indispensable party cannot change the position of the original parties, or change the nature and form of the action or the issues presented therein. 2 Bancroft, Code Practice and Remedies, sec. 775, p. 1139; *Smithberger v. Banning,* 130 Neb. 354, 265 N. W. 10; or introduce new and foreign issues into the action as joined by the original parties, a rule which obtains in the great majority of jurisdictions. *Twin City Milk Producers Assn. v. Oase,* 199 Minn. 124, 271 N. W. 253. An intervener cannot widen the scope of the issues (*First Nat. Bank v. Lancaster, supra*); or broaden the scope or function of mandamus proceedings (38 C. J., sec. 560, p. 857; 4 Bancroft, Code Pleading, Practice and Remedies, sec. 3900, p. 3008); or raise questions which might be the subject of litigation but which are extraneous to the controlling question to be decided in the case. *Cleveland Ry. Co. v. Village of North Olmstead,* 130 Ohio St. 144, 198 N. E. 41.

Finally, it will be remembered that nothing had been done by the governing body of the city except to pass the resolution and appoint a power commission. Thus no provision of the Peoples Power Commission law has as yet become operative to affect any right of any person, injuriously or otherwise, and its provisions may never do so except by favorable vote of the electorate of the city of Omaha, the very right claimed by relators in this section. There is thereby presented at most abstract or hypothetical constitutional questions which do not arise from existing facts or rights, and courts will not ordinarily pass upon them. 34

Am. Jur., sec. 81, p. 870; *Cincinnati v. Vester, supra.* In many similar cases we have held that this court will not anticipate a question of constitutional law in advance of the necessity of deciding it, and will not formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. *In re Application of City of Sidney,* 144 Neb. 6, 12 N. W. 2d 104. "As a general rule, the constitutionality of a statute will be passed on only if, and to the extent that, it is directly and necessarily involved in a justiciable controversy and is essential to the protection of the rights of the parties concerned." 16 C. J. S., sec. 94, p. 207. " 'The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it.' (*California v. San Pablo & Tulare R. R. Co.,* 149 U. S. 308, 314.)" *Headley v. City of Rochester,* 272 N. Y. 197, 5 N. E. 2d 198.

It is firmly established as the universal rule that a person "may attack the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage; and to raise the question he must show that the alleged unconstitutional feature of the statute injures him and so operates as to deprive him of a constitutional right, and, of course, it is prerequisite that he establish in himself the claimed right which is alleged to be infringed." 16 C. J. S., sec. 76, p. 162. We have held that, "A party to a suit will not ordinarily be permitted to attack the constitutionality of a statute in a case where his rights and interests are not invaded or affected by its provisions." *State v. Brandt,* 83 Neb. 656, 120 N. W. 196. Also, "A litigant who is not shown to have been prejudiced by the enforcement of an act of the legislature is not in position to assail such act on the ground of its being unconstitutional." *Cram v. Chicago, B. & Q. Ry. Co.,* 85 Neb. 586, 123 N. W. 1045. See, also, *State ex rel. Herbert v. Anderson,* 122 Neb. 738, 241 N. W. 545. " * * * one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict

with the constitution." 16 C. J. S., sec. 76, p. 161. It was aptly said in *Headley* v. *City of Rochester, supra,* quoting from *Lehon v. City of Atlanta,* 242 U. S. 53, 37 S. Ct. 70, "One cannot invoke to defeat a law an apprehension of what might be done under it and, which if done, might not receive judicial approval." As stated in 38 C. J., sec. 681, p. 921, "Of course in no event will the constitutional question be decided (in a mandamus proceeding) unless it is necessary to a determination of the case and the protection of some substantial right; nor will it be decided before the time when the statute is to take effect has arrived and a proper case under the statute is presented."

For the reasons heretofore stated, we decide that the trial court did not err in finding and deciding that the constitutional questions were issues which could not properly be decided in this action and that the supplemental petition in intervention of the preferred stockholders and the petition in intervention of Calabria raising those questions should be dismissed. However, we decide that the trial court erred in finding that the resolution was legislative in character and in granting a peremptory writ of mandamus, together with ancillary injunctive relief as prayed by relators, by intervener International Brotherhood of Electrical Workers Union, Local Union No. B-763, and by interveners preferred stockholders. Therefore, the judgment of the trial court is affirmed in part, and in part reversed with directions to enter judgment in conformity with this opinion. The interveners shall be taxed with all the costs of their own respective interventions in accordance with section 25-329, R. S. 1943, but all other costs shall be taxed to relators.

AFFIRMED IN PART AND IN PART
REVERSED, WITH DIRECTIONS.