772 N.W.2d 88 (2009)
278 Neb. 547
HARLEYSVILLE INSURANCE GROUP, appellee,
v.
OMAHA GAS APPLIANCE CO., doing business as Rybin Plumbing and Heating, appellee, and
Victoria M. Beck, Personal Representative of the Estate of Nancy Sachs and Special Administrator of the Estate of Richard Sachs, intervenor-appellant.
No. S-07-1235.
Supreme Court of Nebraska.
September 18, 2009.
*90 Matthew D. Hammes and Ralph A. Froehlich, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., Omaha, for intervenor-appellant.
Dan H. Ketcham, Omaha and Meredith J. Kuehler, of Engles, Ketcham, Olson & Keith, P.C., for appellee Harleysville Insurance Group.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

I. NATURE OF CASE
Nancy Sachs and Richard Sachs were allegedly killed by carbon monoxide poisoning after Omaha Gas Appliance Co., doing business as Rybin Plumbing and Heating (Rybin), failed to properly repair and maintain a gas boiler in their home. Victoria M. Beck is the personal representative of the estate of Nancy Sachs and special administrator of the estate of Richard Sachs, and in those capacities, she brought a negligence action against Rybin. Rybin's insurer, Harleysville Insurance Group (Harleysville), brought this declaratory judgment action against Rybin alleging that pollution exclusions preclude coverage for the alleged occurrence. Beck intervened in the declaratory judgment action and now appeals the summary judgment entered in favor of Harleysville.
Beck alleges that the district court erred in failing to appreciate the differences in the Harleysville policies between "liability" caused by a pollutant and "injury" caused by a pollutant. In response, Harleysville argues that Beck has no standing to appeal in the declaratory judgment action because Rybin chose not to appeal. We hold that Beck had standing to appeal, but affirm the order of summary judgment in favor of Harleysville.

*91 II. FACTS
Rybin is in the business of plumbing, heating, and air conditioning. The Sachses' home was heated by radiators connected to a gas boiler system, and Rybin repaired the system after a fire occurred in the Sachses' home. Rybin conducted subsequent service checks on the boiler and eventually replaced it in 2001. Thereafter, the Sachses both died. Beck alleged that the Sachses' deaths were caused by the original boiler's leaking carbon monoxide into the home and that Rybin had failed to conduct reasonable inspections of and repairs to the boiler.
At the time of the alleged negligent acts, Rybin had general liability and umbrella policies with Harleysville. The liability policy provided that Harleysville would indemnify Rybin for sums Rybin became obligated to pay as damages because of "`bodily injury'" "to which this insurance applies." The general liability policy contained a pollution exclusion endorsement with "Limited Coverage for Pollution From a Hostile Fire." The endorsement was in effect at all relevant time periods and stated: "This insurance does not apply to ... `[b]odily injury' or `property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." "`Pollutants'" were defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."
The umbrella policy stated that Harleysville would pay on behalf of Rybin the "`ultimate net loss' in excess of the `applicable underlying limit' which the insured becomes legally obligated to pay as damages because of ... `[b]odily injury' ... covered by this policy." A limited pollution exclusion in the umbrella policy provided that "[t]his insurance does not apply to ... [a]ny liability caused by pollutants excluded by `underlying insurance.'" This provision stated further that the listed exceptions to the pollution exclusion outlined in the umbrella policy were overridden by any broader exclusion in the underlying policy. "`Underlying insurance'" was defined so as to include the liability policy, any replacement or renewal policies, and any other insurance available to the insured.
Harleysville's complaint for declaratory judgment alleged that due to the pollution exclusion in the general liability policy and the total pollution exclusion endorsement on that policy, Harleysville had "no duty to defend or indemnify or provide any coverage whatsoever to Rybin in connection with any claim ... arising out of the alleged carbon monoxide exposure." The complaint did not specifically refer to the umbrella policy, but it was attached as an exhibit.
Beck filed a motion asking for permission to intervene in the declaratory judgment action and to be named as a party defendant. The court granted leave to intervene. Thereafter, the court granted Harleysville's motion for summary judgment, concluding that Harleysville did not have a duty to defend or indemnify Rybin in its pending litigation with Beck because carbon monoxide was a "pollutant" excluded from coverage. Because Beck had not been notified of the summary judgment proceedings, however, the court later vacated that order. Harleysville again moved for summary judgment, and Beck filed a cross-motion for summary judgment. In support of her motion for summary judgment, Beck argued that the pollution exclusion in the umbrella policy was distinct from the general liability policy and did not bar coverage for the Sachses' injuries. Beck also asserted that Harleysville *92 was estopped from asserting any exclusion under the umbrella policy because it did not specifically address that policy in its complaint for declaratory judgment.
The court denied Beck's motion for summary judgment and again granted summary judgment in favor of Harleysville. The court explained that the language of the umbrella policy excluding coverage for "liability caused by pollutants" did not indicate that the pollutant must be the sole cause of the insured's liability or that the application of the exclusion depended on the underlying negligence of the insured. The court also found no authority for the assertion that an insurer must plead specific policy exclusions in a declaratory judgment action.
Beck moved to alter or amend the summary judgment order. Harleysville resisted, arguing, among other things, that because Rybin did not challenge the summary judgment order, Beck, as merely an intervenor, was unable to make any challenge. The court rejected this argument and found that Beck, as an intervenor, was to be accorded the rights which, under like circumstances, belong to any other unsuccessful suitor.[1] But the court found that the motion otherwise lacked merit. Beck appeals.

III. ASSIGNMENTS OF ERROR
Beck assigns that (1) the district court erred in determining as a matter of law that the umbrella policy does not provide coverage for Rybin's negligent acts or omissions resulting in the Sachses' deaths and (2) Harleysville has waived its right to assert an exclusion under the umbrella policy by failing to plead any exclusion under the umbrella policy.

IV. STANDARD OF REVIEW
The interpretation of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the trial court.[2]
Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion.[3]

V. ANALYSIS

1. STANDING
We first address Harleysville's jurisdictional arguments relating to Beck's standing before our court. Harleysville asserts that Beck does not have standing to appeal because the nonintervening party, Rybin, chose not to appeal. Alternatively, Harleysville asserts that Beck cannot present any arguments about the interpretation of the policies that were not also made by Rybin. Harleysville apparently hopes to bind Beck by res judicata to a judgment limiting her future ability to recover against Harleysville and, at the same time, preclude her access to the appellate courts to challenge that judgment. This we will not do. As the trial court noted, an intervenor against whom a judgment has been rendered must be accorded the rights *93 which, under like circumstances, belong to any other unsuccessful suitor.[4]
Harleysville's reliance on State ex rel. Nelson v. Butler[5] is misplaced. In Butler, we said: "An interven[o]r who is not an indispensable party cannot change the position of the original parties, or change the nature and form of the action or the issues presented therein."[6] This proposition, however, does not touch on the right to appeal an unfavorable judgment. The proposition refers to the scope of the action before the trial court and the fact that "it is fundamental that an intervenor takes the action as he finds it and cannot secure relief that is foreign or extraneous to the action."[7]
In other words, "[a]n interven[o]r cannot widen the scope of the issues ...[,] broaden the scope or function of [the] proceedings... [,] or raise questions which might be the subject of litigation but which are extraneous to the controlling question to be decided in the case."[8] Thus, in Butler, we held that the intervenors' challenge to the constitutionality of a legislative resolution improperly broadened the scope of a mandamus action in which the original parties relied upon the resolution's validity.[9] And in Arnold v. Arnold,[10] we held that the district court was correct in refusing to consider, in a dissolution action, a series of law actions between the intervening parents of the husband and the divorcing spouses based on various promissory notes and debts alleged to be due to the parents.
In this case, Beck did not seek to expand the scope of the original declaratory judgment action. Beck did not seek, for example, to litigate the underlying issues of negligence that were pending in another action. She merely presented alternative arguments for the resolution of the central question of the declaratory judgment actionwhether Harleysville's policy with Rybin excluded coverage in relation to Beck's claims.
We are aware that because the underlying negligence action was not yet resolved at the time of declaratory judgment, Beck's subrogation interest, much like Harleysville's interest in resolving the issue of indemnification, depends upon the ultimate success of that action. And the requirements for a justiciable controversy and a direct and legal interest in the controversy by the parties are no less exacting in a case brought under the declaratory judgment statute than in any other type of suit.[11] An action for declaratory judgment cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain.[12]
*94 But a determination with regard to ripeness depends upon the circumstances in a given case and is a question of degree.[13] With regard to the jurisdictional aspect of ripeness, we employ a two-part test in which we consider (1) the fitness of the issues for judicial decision and (2) the hardship of the parties of withholding court consideration.[14] We have already held, in Cincinnati Ins. Co. v. Becker Warehouse, Inc.,[15] that the meaning of a pollution exclusion in an insurance policy is ripe for review even before the underlying claim between the victim and the insured has been resolved. We held this to be true as to both the insurer's duty to defend in the pending suit and its duty to indemnify the insured in the event judgment is rendered in favor of the plaintiff. We explained that the meaning of the language of an insurance policy was a question of law that did not turn on any facts yet to be determined in the separate suit and that the duty to defend was "bound up" in whether the policy covered indemnification for the potential damages.[16] Thus, there was a present, substantial controversy between parties having adverse legal interests susceptible to immediate resolution and capable of present judicial enforcement.[17]
It is generally held that injured persons, although they lack privity of contract with the insurer, are interested and proper parties to a declaratory judgment action brought by the insurer against the insured to determine coverage as it pertains to a pending lawsuit.[18] In American Fam. Mut. Ins. Co. v. Hadley,[19] our consideration of an injured party's appeal from a declaratory judgment action brought by the tort-feasor's insurer is an implicit recognition of this rule and presents procedural facts very similar to the case at bar. In Hadley, the insurer had brought a declaratory judgment action against the insured, alleging that it had no duty to defend a pending lawsuit by the parents of the alleged victim of civil assault and battery. The insurer also alleged that it had no duty to indemnify the insured for any claim arising from that lawsuit. The parents of the injured child were allowed to intervene despite the insurer's protestations that the parents were not necessary parties and should be dismissed. Summary judgment was eventually entered in favor of the insurer, and the insured chose not to appeal. In an appeal brought by the parents from the declaratory judgment action, we addressed the meaning of the merits of the parents' arguments as to the meaning of the insurance policy.[20]
We conclude that Beck has standing to bring this appeal and to present the arguments that she makes. Beck was a proper party defendant to Harleysville's declaratory *95 judgment action alleging that it had no duty in relation to the alleged incident that killed the Sachses. While Beck presented somewhat different assertions as to why the policy should cover the incident, those did not interject any factual or legal questions extraneous to the action. The central question remained whether, as a matter of law, the pollution exclusions barred coverage. We turn now to whether the district court was correct in its interpretation of the exclusions.

2. POLLUTION EXCLUSION IN UMBRELLA POLICY
We note that Beck takes no issue with the district court's determination that a pollution exclusion precluded coverage under Harleysville's general liability policy with Rybin. Neither does Beck dispute that the carbon monoxide gases were "pollutants" as defined by the policies. Beck argues instead that the umbrella policy extended coverage to pollution occurrences excluded by the general liability policy. According to Beck, the umbrella policy excluded only coverage stemming from strict liability pollution claims, but it extended coverage for pollution-related injuries caused by negligence.

(a) Failure to Plead
Beck's first argument, however, is that Harleysville is procedurally barred from raising any exclusion under the umbrella policy. According to Beck, Harleysville "had raised the issue of no coverage under [the] umbrella [policy], but [it] didn't identify any exclusions in the umbrella [policy]." Beck points out that, generally, exclusions in insurance policies are treated as affirmative defenses and therefore must be specifically pled.[21]
We find no merit to Beck's assertion that Harleysville is barred, by a failure to plead, from raising the pollution exclusion in the umbrella policy. Harleysville attached both policies to its complaint, and the complaint sufficiently put Rybin and Beck on notice that Harleysville was claiming it was not liable for the Sachses' deaths under either policy.[22] It is apparent that Harleysville specifically pled only the general liability policy because it believed the umbrella policy was merely a monetary supplement to the general policy that incorporated the underlying policy's pollution exclusion. As will be discussed below, we find that view to be correct.

(b) Merits
In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof.[23] In situations involving the interplay between primary and umbrella coverages, courts should examine the overall pattern of insurance and construe each policy as a whole.[24] Reading the phrase, "[a]ny liability caused by pollutants excluded by `underlying insurance,'" we find no basis for Beck's conclusion that this could reasonably be construed as providing coverage, admittedly excluded by the underlying insurance, for negligence-based pollution occurrences. Beck would distinguish this phrase from "`bodily injury caused by pollutants'"[25] or, for example, *96 from "liability caused by negligence and involving pollutants" and would interpret it as synonymous with "bodily injury stemming from a strict liability claim." But we need not engage in Beck's extensive semantic discussion of whether the isolated phrase referring to "liability caused by pollutants" refers solely to legal obligations stemming from the pollutants themselves without any human causal element. Viewing the phrase in context, it clearly conveys that the umbrella policy was not meant to provide coverage for any additional pollution occurrences excluded under the general liability policy. The umbrella policy, like the general liability policy, excluded coverage for liability occasioned by the release of pollutantsregardless of what level of human culpability was involved.

VI. CONCLUSION
We affirm the judgment of the district court in favor of Harleysville.
AFFIRMED.
GERRARD, J., participating on briefs.
NOTES
[1] See Kirchner v. Gast, 169 Neb. 404, 100 N.W.2d 65 (1959).
[2] Jones v. Shelter Mut. Ins. Cos., 274 Neb. 186, 738 N.W.2d 840 (2007).
[3] County of Sarpy v. City of Gretna, 267 Neb. 943, 678 N.W.2d 740 (2004).
[4] Kirchner v. Gast, supra note 1.
[5] State ex rel. Nelson v. Butler, 145 Neb. 638, 17 N.W.2d 683 (1945).
[6] Id. at 650, 17 N.W.2d at 691.
[7] Arnold v. Arnold, 214 Neb. 39, 41, 332 N.W.2d 672, 674 (1983).
[8] State ex rel. Nelson v. Butler, supra note 5, 145 Neb. at 650, 17 N.W.2d at 691 (citations omitted).
[9] Id.
[10] Arnold v. Arnold, supra note 7.
[11] See, City of Omaha v. City of Elkhorn, 276 Neb. 70, 752 N.W.2d 137 (2008); Koch v. Aupperle, 274 Neb. 52, 737 N.W.2d 869 (2007); Douglas Cty. Sch. Dist. 0001 v. Johanns, 269 Neb. 664, 694 N.W.2d 668 (2005); Ruzicka v. Ruzicka, 262 Neb. 824, 635 N.W.2d 528 (2001); Dobson v. Ocean Accident & Guarantee Corporation, 124 Neb. 652, 247 N.W. 789 (1933); 26 C.J.S. Declaratory Judgments § 25 (2001).
[12] City of Omaha v. City of Elkhorn, supra note 11.
[13] See id.
[14] Id.
[15] Cincinnati Ins. Co. v. Becker Warehouse, Inc., 262 Neb. 746, 635 N.W.2d 112 (2001).
[16] Id. at 753, 635 N.W.2d at 118. See, also, Farm Bureau Ins. Co. v. Witte, 256 Neb. 919, 594 N.W.2d 574 (1999). Compare, Medical Protective Co. v. Schrein, 255 Neb. 24, 582 N.W.2d 286 (1998); Ryder Truck Rental v. Rollins, 246 Neb. 250, 518 N.W.2d 124 (1994); Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981).
[17] See Nebraska Coalition for Ed. Equity v. Heineman, 273 Neb. 531, 731 N.W.2d 164 (2007).
[18] See, generally, Annot., 142 A.L.R. 8 et seq. (1943).
[19] American Fam. Mut. Ins. Co. v. Hadley, 264 Neb. 435, 648 N.W.2d 769 (2002).
[20] See id.
[21] See, e.g., Spulak v. Tower Ins. Co., 257 Neb. 928, 601 N.W.2d 720 (1999).
[22] See Gies v. City of Gering, 13 Neb.App. 424, 695 N.W.2d 180 (2005).
[23] Travelers Indemnity Co. v. International Nutrition, 273 Neb. 943, 734 N.W.2d 719 (2007); Callahan v. Washington Nat. Ins. Co., 259 Neb. 145, 608 N.W.2d 592 (2000).
[24] Treder ex rel. Weigel v. LST, Ltd. Partnership, 271 Wis.2d 771, 679 N.W.2d 555 (2004). See, also, Ill. Emcasco Ins. Co. v. Cont. Cas. Co., 139 Ill.App.3d 130, 487 N.E.2d 110, 93 Ill.Dec. 666 (1985).
[25] Brief for appellant at 13.