Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Streck, Inc., a Nebraska corporation, appellee, v.
Ryan Family, L.L.C., appellee, and Stacy Ryan,
individually and derivatively on behalf of
Ryan Family, L.L.C., appellant.

___ N.W.2d ___

Filed September 15, 2017.    No. S-16-664.

1. **Interventions: Appeal and Error.** Whether a party has the right to intervene in a proceeding is a question of law. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Interventions: Final Orders: Appeal and Error.** An order denying intervention is a final order for purposes of appeal.
4. **Interventions: Final Orders.** Neb. Rev. Stat. § 25-1315 (Reissue 2016) does not modify Nebraska's final order jurisprudence as it regards orders denying intervention.
5. **Interventions.** As a prerequisite to intervention under Neb. Rev. Stat. § 25-328 (Reissue 2016), the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action.
6. ____. An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right. Simply having a claim that arises out of the same facts as the claims at issue in the litigation does not constitute having a sufficient interest to support intervention.
7. **Interventions: Pleadings.** A person seeking to intervene must allege facts showing that he or she possesses the requisite legal interest in the subject matter of the action.

8. ____: ____. For purposes of ruling on a motion for leave to intervene, a court must assume that the intervenor's factual allegations set forth in the complaint are true.

9. ____: ____. A prospective intervenor can raise his or her claims or defenses, but those claims or defenses must involve the same core issue as the claims between the existing parties. Intervenors can raise only issues that sustain or oppose the respective contentions of the original parties.

10. **Interventions.** An intervenor is bound by any determinations that were made before he or she intervened in the action. In other words, an intervenor must take the suit as he or she finds it.

11. **Corporations: Contracts.** The Nebraska Uniform Limited Liability Company Act is a default statute; subject to certain enumerated exceptions, the act governs only when the operating agreement is silent.

12. ____: ____. Under the Nebraska Uniform Limited Liability Company Act, a member of a limited liability company is deemed to assent to the operating agreement.

13. **Corporations.** Under the Nebraska Uniform Limited Liability Company Act, in a manager-managed limited liability company, matters relating to the activities of the company are decided exclusively by the managers unless otherwise expressly provided in the act.

14. **Corporations: Actions: Interventions.** The fact that a member of a limited liability company might experience reduced distributions, depending on the outcome of a lawsuit against the company, does not give the member a direct and legal interest in the lawsuit sufficient to support intervention.

15. ____: ____: ____. For purposes of determining the right to intervene, a court generally treats actions by a member of a limited liability company in the same manner as actions by a shareholder of a corporation.

16. **Corporations: Actions: Parties.** As a general rule, a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property. Such a cause of action is in the corporation and not the shareholders. The right of a shareholder to sue is derivative in nature and normally can be brought only in a representative capacity for the corporation.

17. **Corporations: Actions: Parties: Interventions.** When a corporation cannot or will not protect the interests of the stockholders, a stockholder may intervene in an action on behalf of the corporation for the shareholder's own protection. However, this is a very limited exception to the general rule that a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property.

18. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed.

Paul Heimann, Bonnie M. Boryca, and Karen M. Keeler, of Erickson & Sederstrom, P.C., for appellant.

John D. Stalnaker and Aimee K. Cizek, of Stalnaker, Becker & Buresh, P.C., for appellee Ryan Family, L.L.C.

Thomas H. Dahlk and Victoria H. Buter, of Kutak Rock, L.L.P., and Ronald E. Reagan, of Reagan, Melton & Delaney, L.L.P., for appellee Streck, Inc.

Heavican, C.J., Wright, Cassel, Stacy, and Funke, JJ.

Per Curiam.

In January 2016, Streck, Inc., filed a complaint against the Ryan Family, L.L.C. (L.L.C.), in the district court for Sarpy County. Streck's complaint alleged the L.L.C. breached a lease agreement containing an option to purchase real property and sought specific performance. The L.L.C. responded and defended the action. In June, a member of the L.L.C. moved to intervene in her own behalf and on behalf of the L.L.C. She appeals from the district court's order denying her motion. We affirm.

## I. FACTS

### 1. Parties

Streck is a Nebraska corporation with its principal place of business in La Vista, Sarpy County, Nebraska. The L.L.C. is a Nebraska limited liability company composed of six members of the Ryan family, including Stacy Ryan (Ryan). The L.L.C.'s only asset is real property located in La Vista, which

it leases to Streck, and the cash generated from the rental of that property.

## 2. LEASE AGREEMENT

The L.L.C. leased the property to Streck pursuant to an agreement dated December 1999 and subsequently amended. The lease gave Streck an option to purchase the property from the L.L.C. based on certain conditions. Streck claims it met the conditions and properly exercised the option. Based on the date Streck exercised the option, closing should have occurred no later than January 3, 2016. When no closing occurred, Streck filed suit against the L.L.C.

## 3. LAWSUIT BETWEEN STRECK
### AND L.L.C.

Streck filed its complaint January 13, 2016, in the district court. It sought an order declaring the L.L.C. in breach of the lease and ordering specific performance of the option to purchase.

The L.L.C. operating agreement vests all management duties in a management board consisting of comanagers Wayne Ryan and Connie Ryan. After being served with the complaint, the comanagers of the L.L.C. filed an application for appointment of a receiver to represent the L.L.C., citing a conflict which they described as follows:

> Co-Manager Dr. Wayne Ryan believes the [L.L.C.] must oppose Streck's Complaint as he believes Streck does not hold a valid Option to Purchase the Property due in part to an Event of Default pursuant to the Lease Agreement. Co-Manager Connie Ryan disagrees with Dr. Ryan, and the Co-Managers have been unable to agree on the management of the [L.L.C.]
>
>  . . . Co-Manager Connie Ryan has declined Dr. Ryan's request to recuse herself from the management of the [L.L.C.], and Dr. Ryan has similarly declined to allow Connie Ryan to serve as sole Manager of the [L.L.C.] As

a result of the Co-Managers' disagreements, the [L.L.C.] is unable to retain legal counsel to respond to Streck's Complaint in the above-captioned case.

    . . . In light of their disagreement, the Co-Managers believe that appointment of [a] Receiver for the [L.L.C.] is necessary and appropriate to respond to Streck's Complaint and avoid default for failure to Answer.

No party opposed the comanagers' request, and the court appointed a receiver to represent the L.L.C.'s interest in the lawsuit.

On March 3, 2016, the receiver, on behalf of the L.L.C., filed an answer and counterclaim. The counterclaim alleged that Streck was in default of the lease agreement when it attempted to exercise the option and that the default voided Streck's right to exercise the option.

On June 15, 2016, Streck moved for partial summary judgment, asking the court to find as a matter of law that it was not in default at the time it exercised the option to purchase. At the hearing on the partial summary judgment motion, the parties offered a joint stipulation, which the court received. Posthearing briefing was permitted, and the matter was set for further proceedings on July 5.

### 4. Complaint in Intervention

On June 22, 2016, Ryan filed a "Complaint in Intervention" seeking to intervene "on her own behalf and derivatively on behalf of the [L.L.C.]" On June 27, she moved to continue the summary judgment hearing scheduled for July 5. On June 29, Ryan filed a "Motion for Order Permitting Complaint in Intervention" asking for "an order permitting her to intervene [and] allowing her Complaint in Intervention, filed and served on June 22, 2016."

All of Ryan's motions were taken up at a hearing on July 1, 2016. On July 5, the court entered two orders. One order overruled Ryan's motion to intervene, and the other overruled her motion to continue the summary judgment hearing.

Neither order set forth the court's reasoning. Ryan appeals from both orders. We moved the appeal to our docket on our own motion.[1]

## II. ASSIGNMENTS OF ERROR

Ryan assigns, restated, that the district court erred in (1) disallowing her complaint in intervention; (2) denying her motion to intervene, including her request for access to the parties' prior discovery and her request to conduct additional discovery; and (3) failing to continue the hearing on Streck's motion for summary judgment or to reopen the summary judgment record to allow her an opportunity to conduct necessary discovery and to participate in the summary judgment proceedings.

## III. STANDARD OF REVIEW

[1] Whether a party has the right to intervene in a proceeding is a question of law.[2] On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[3]

## IV. ANALYSIS

### 1. Jurisdiction

[2,3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] Since at least 1985, we have held that an order denying intervention is a final order for purposes of appeal.[5] Streck acknowledges this, but contends that our final order jurisprudence has failed to consider the

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

[2] *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001).

[3] *Id.*

[4] *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002).

[5] *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985).

effect of the Legislature's adoption in 2000 of Neb. Rev. Stat.
§ 25-1315 (Reissue 2016). Section 25-1315(1) provides:

> When more than one claim for relief is presented in an
> action, whether as a claim, counterclaim, cross-claim, or
> third-party claim, or when multiple parties are involved,
> the court may direct the entry of a final judgment as to
> one or more but fewer than all of the claims or parties
> only upon an express determination that there is no just
> reason for delay and upon an express direction for the
> entry of judgment. In the absence of such determina-
> tion and direction, any order or other form of decision,
> however designated, which adjudicates fewer than all
> the claims or the rights and liabilities of fewer than all
> the parties shall not terminate the action as to any of the
> claims or parties, and the order or other form of deci-
> sion is subject to revision at any time before the entry of
> judgment adjudicating all the claims and the rights and
> liabilities of all the parties.

Streck argues that the order denying Ryan's motion to intervene
did not meet the requirements of § 25-1315, because it did not
contain an express determination that there was no just reason
for delay and it did not expressly direct entry of judgment.

[4] We conclude § 25-1315 does not modify our final order
jurisprudence as it regards orders denying intervention. The
plain language of the statute references claims, counterclaims,
cross-claims, and third-party claims, but does not mention
complaints in intervention. Moreover, even after § 25-1315
was enacted, we continued to apply our existing final order
jurisprudence to orders denying intervention,[6] and we see no
principled basis to depart from that precedent. For these rea-
sons, we conclude that our final order jurisprudence regarding
orders denying intervention was not superseded by § 25-1315

---

[6] See, *Spear T Ranch v. Knaub*, 271 Neb. 578, 713 N.W.2d 489 (2006);
*Douglas Cty. Sch. Dist. 0001 v. Johanns*, 269 Neb. 664, 694 N.W.2d 668
(2005).

and that the order denying Ryan's motion to intervene is a final, appealable order. We have jurisdiction over this appeal, and Streck's arguments to the contrary are without merit.

## 2. Intervention

### (a) Legal Framework

The right to intervene is granted by statute in Nebraska. Neb. Rev. Stat. § 25-328 (Reissue 2016) provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

Ryan bases her intervention rights solely on § 25-328, so we begin by reviewing the legal propositions governing such intervention.

[5-8] As a prerequisite to intervention under § 25-328, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action.[7] An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right.[8] Simply having a claim that arises out of the same facts as the claims at issue in the litigation does not constitute having a sufficient interest to support intervention.[9] Therefore, a person seeking to intervene must allege facts showing that

---

[7] *Spear T Ranch v. Knaub, supra* note 6.

[8] *Id.*

[9] See *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959).

he or she possesses the requisite legal interest in the subject matter of the action.[10] For purposes of ruling on a motion for leave to intervene, a court must assume that the intervenor's factual allegations set forth in the complaint are true.[11]

[9,10] Our jurisprudence also recognizes some practical limitations on the right to intervene. A prospective intervenor can raise his or her claims or defenses, but those claims or defenses must involve the same core issue as the claims between the existing parties.[12] Intervenors can raise only issues that "sustain or oppose the respective contentions of the [original parties]."[13] The intervenor is bound by any determinations that were made before he or she intervened in the action.[14] In other words, "'[a]n interven[o]r must take the suit as he finds it . . . .'"[15]

With these principles in mind, we review Ryan's complaint in intervention to determine whether she has alleged a direct and legal interest sufficient to support intervention.

### (b) Ryan's Complaint to Intervene

Ryan alleges she has a nearly 20-percent interest in the L.L.C. as a member thereof. She further alleges the interests of the L.L.C. are not being "fully protected" by the receiver, and she alleges the receiver should have asserted additional claims and defenses on behalf of the L.L.C. She also seeks by intervention to challenge the appointment of the receiver and to present a claim that the comanagers of the L.L.C. breached the operating agreement by requesting appointment of a receiver.

---

[10] *Spear T Ranch v. Knaub, supra* note 6.

[11] *Id.*

[12] See *Ruzicka v. Ruzicka, supra* note 2.

[13] *State ex rel. Nelson v. Butler*, 145 Neb. 638, 650, 17 N.W.2d 683, 691 (1945).

[14] See *School Dist. of Gering v. Stannard*, 196 Neb. 367, 242 N.W.2d 889 (1976).

[15] *Drainage District v. Kirkpatrick-Pettis Co.*, 140 Neb. 530, 538, 300 N.W. 582, 587 (1941).

Before we address whether Ryan has shown a direct and legal interest sufficient to allow her to intervene, we note that to the extent Ryan seeks by intervention to challenge the appointment of the receiver or allege the L.L.C. managers have breached the operating agreement, she is attempting improperly to expand the scope of the litigation. As stated earlier, the claims or defenses of an intervenor must involve the same core issues as the claims between the existing parties,[16] and intervenors can raise only issues that "sustain or oppose the respective contentions of the [original parties]."[17] Here, the dispute between the original parties is over whether there was a breach of the lease agreement. The suit does not involve either the validity of the appointment of the receiver or any potential breach of the operating agreement. Thus, Ryan's claims challenging the appointment of the receiver or the comanagers' breach of the operating agreement cannot provide a basis for her right to intervene in this action, and we will not address those claims further.

### (i) No Right to Intervene
### in Ryan's Own Behalf

To support her claim of a direct and legal interest sufficient to support the right to intervene in her own behalf, Ryan argues she is a 20-percent member of the L.L.C. and stands to lose or gain financially depending on how the court resolves the dispute between the L.L.C. and Streck. Before addressing this argument, we clarify the nature of Ryan's rights as a member of the L.L.C.

[11] Ryan's rights in that regard are governed by the Nebraska Uniform Limited Liability Company Act (LLC Act)[18] and the terms of the L.L.C.'s operating agreement. Subject to certain enumerated exceptions not relevant here, most matters

---

[16] See *Ruzicka v. Ruzicka, supra* note 2.

[17] *State ex rel. Nelson v. Butler, supra* note 13, 145 Neb. at 650, 17 N.W.2d at 691.

[18] Neb. Rev. Stat. § 21-101 et seq. (Reissue 2012 & Cum. Supp. 2016).

are governed by the operating agreement entered into by the members of the L.L.C., and the LLC Act governs only when the operating agreement is silent.[19]

[12,13] As pertinent here, the LLC Act provides that a member of a limited liability company is deemed to assent to the operating agreement.[20] And, specifically, "[i]n a manager-managed limited liability company, . . . [e]xcept as otherwise expressly provided in the [LLC Act], any matter relating to the activities of the company is decided *exclusively* by the managers."[21]

The L.L.C. operating agreement, a copy of which was attached to Ryan's complaint in intervention, provides: "The Members of the Company vest the management of the Company in a Management Board, which shall have *sole* power and authority to conduct the affairs of the Company . . . ." The operating agreement also gives the managers the right "[t]o employ . . . managing agents or other experts to perform services for the Company and . . . [t]o enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Managers may approve." Based on the provisions of the LLC Act and the operating agreement, Ryan has no legal authority to conduct the affairs of the L.L.C.

Ryan contends that despite being a nonmanaging member of the L.L.C., she nevertheless has a direct and legal interest in the suit which entitles her to intervene, because she stands to lose or gain financially depending on how the court resolves the dispute between the L.L.C. and Streck. We considered, and rejected, a similar argument in *Steinhausen v. HomeServices of Neb.*[22]

---

[19] See § 21-110.

[20] § 21-111(b).

[21] § 21-136(c)(1) (emphasis supplied).

[22] *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

There, the sole member of a limited liability company (LLC) filed a complaint on behalf of himself and the LLC, alleging a third party had engaged in tortious interference with the business relationships or expectancies of the LLC. We held that members of an LLC cannot, in their own behalf, maintain a claim for tortious interference with the business relationships or expectancies of an LLC, because such a claim can be maintained only by the parties to the business relationship.[23] We specifically reasoned that even though a member of an LLC might experience reduced distributions from the LLC if the LLC's relationships are interfered with, it did not convert the claim into one in behalf of the member personally.[24]

[14] Here, neither the operating agreement nor the LLC Act gives Ryan the authority to speak for, or make decisions for, the L.L.C., even in matters that may indirectly affect her financial interests. That power is vested exclusively with the managers of the L.L.C. and anyone they appoint pursuant to their power to employ others to perform services for the L.L.C. The fact that Ryan, as a member of the L.L.C., may experience reduced distributions, depending on the outcome of the lawsuit against the L.L.C., does not give her a direct and legal interest in the lawsuit sufficient to support intervention in her own behalf.

Moreover, Ryan does not allege she was owed a special duty by the receiver separate and distinct from the duty owed to the L.L.C.[25] Nor does she allege any financial injury or damage sustained in her individual capacity that would be distinct from that sustained by other L.L.C. members.[26] Under these circumstances, Ryan's membership interest in the L.L.C. does not give her a direct and legal interest sufficient to allow

---

[23] *Id.*

[24] *Id.*

[25] See *Freedom Fin. Group v. Woolley*, 280 Neb. 825, 792 N.W.2d 134 (2010).

[26] See *id.*

her to intervene in her own behalf in the action. We reject her arguments to the contrary.

### (ii) No Right to Intervene on L.L.C.'s Behalf

Ryan also argues she has the right to intervene on behalf of the L.L.C. She asserts that Streck is seeking to buy the L.L.C.'s only asset and alleges that the interests of the L.L.C. have not been "fully protected" by the comanagers and receiver.

[15] To determine whether Ryan has a direct and legal interest sufficient to allow her to intervene on behalf of the L.L.C., we find guidance in the law governing whether and when a shareholder of a corporation may intervene on behalf of the corporation. This is so because we have generally treated actions by a member of an LLC in the same manner as actions by a shareholder of a corporation.[27]

[16] As a general rule, a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property.[28] Such a cause of action is in the corporation and not the shareholders.[29] The right of a shareholder to sue is derivative in nature and normally can be brought only in a representative capacity for the corporation.[30]

The LLC Act provides a means to bring a derivative action. Section 21-165 states:

A member may maintain a derivative action to enforce a right of [an LLC] if:

(1) the member first makes a demand on the other members in a member-managed [LLC], or the managers of a manager-managed [LLC], requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within a reasonable time; or

---

[27] See *id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

(2) a demand under subdivision (1) of this section would be futile.

Ryan's complaint in intervention alleges that she "made demand upon the receiver" to assert the additional claims and defenses she wished to raise in this litigation, but that the receiver refused to do so. Alternatively, Ryan alleges that demand upon the managers and receiver would have been futile, because the managers admitted they could not agree to a course of action and the receiver refused to assert the claims and defenses Ryan wished to raise in this litigation. But Ryan has not filed a derivative action, nor does she argue that she has met the requirements for bringing such an action here.

[17] Instead, Ryan primarily relies on this court's decision in *State v. Holmes*[31] to support her motion to intervene on behalf of the L.L.C. In *Holmes*, a receiver had been appointed to represent an insolvent corporation. A shareholder sought to intervene to protect the interests of the corporation, alleging that the corporation was "not represented" in the action, that the corporate officers "refuse[d] to act," and that "the rights of stockholders [were], therefore, unprotected."[32] The shareholder alleged that although a receiver had been appointed, it was done at the request of and for the benefit of the insolvent corporation's creditors. The shareholder further alleged that the receiver had handled the insolvent corporation's assets in a "reckless and improvident manner, and that, if his actions are permitted to go unchallenged, he will waste and dissipate a large amount of valuable property belonging to the [corporation]."[33] On those unique facts, this court observed that the rights of the shareholders were completely unprotected, and we held that the shareholder could intervene on behalf of the corporation, reasoning that "[w]here the corporation can not, or will not, protect the interests of the

---

[31] *State v. Holmes*, 60 Neb. 39, 82 N.W. 109 (1900).

[32] *Id.* at 41, 82 N.W. at 109.

[33] *Id.*

stockholders, the [stockholders] may intervene for their own protection."[34] As such, our decision in *Holmes* recognized a very limited exception to the general rule that a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property.[35] But Ryan has not alleged anything which suggests the exception applies here to support her intervention.

Unlike the facts in *Holmes*, Ryan has not alleged the receiver is completely failing to protect the interests of the L.L.C. and its members, nor would the record support such an inference. The record shows the receiver was appointed at the joint request of the comanagers to "address, answer, and/or defend the Complaint filed . . . by Streck" and has been doing so. Ryan's briefing argues that the receiver could or should be managing the litigation differently, but she has not alleged that the receiver cannot or will not protect the interests of the L.L.C. or its members. On these facts, *Holmes* is inapplicable, and Ryan has argued no other basis for claiming a direct and legal interest sufficient to authorize her intervention on behalf of the L.L.C.

[18] On this record, we conclude Ryan has not alleged a direct and legal interest sufficient to support intervention in the litigation between the L.L.C. and Streck. As such, we do not address her remaining assignments of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[36]

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

MILLER-LERMAN and KELCH, JJ., not participating.

---

[34] *Id.* at 43, 82 N.W. at 110.

[35] See *Freedom Fin. Group v. Woolley, supra* note 25.

[36] *Johnson v. Nelson*, 290 Neb. 703, 861 N.W.2d 705 (2015).